Henry B. WALKER, Jr., Trustee, et al., Appellants,

v.

FELMONT OIL CORPORATION, et al., Ohio River Oil Company, et al., Appellees,

FELMONT OIL CORPORATION et al., Appellants,

v.

OHIO RIVER OIL COMPANY, Inc., et al., Appellees.

Nos. 12839, 12838.

United States Court of Appeals Sixth Circuit.

Feb. 12, 1957.

Henry B. Walker, Jr., Evansville, Ind. (Henry B. Walker, William D. Powell, Evansville, Ind., and Clarence Bartlett, Owensboro, Ky., on the brief), for Henry B. Walker, Jr., trustee, and others.

Morton J. Holbrook, Owensboro, Ky. (L. Allen Rhoads, Henderson, Ky., on the brief), for Henderson County.

Chat Chancellor, Frankfort, Ky., for State Property & Buildings Commission.

Harry Arnold, Tulsa, Okl., Fred W. File, Mattoon, Ill., Byron, Sandidge & Holbrook, Owensboro, Ky., on the brief for appellants Carter Oil Co. and Felmont Oil Corp.

Jo M. Ferguson, Atty. Gen., M. B. Holifield, Asst. Atty. Gen., on the brief for Commonwealth of Kentucky, and State Property & Buildings Comm.

Funk, Chancellor & Marshall, by Chat Chancellor, Frankfort, Ky., on the brief for Ohio River Oil Co.

William C. Craig, of King & Craig, Henderson, Ky., on the brief for Olen D. Sharp.

Before ALLEN, MILLER and STEWART, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

This declaratory judgment action was filed in the District Court by the plaintiffs-appellants under the provisions of Section 2201, Title 28 U.S.Code, seeking an adjudication of the rights of the plaintiffs as against the defendants therein in certain portions of the bed of the Ohio River that lie north of the thread of the stream, opposite the Kentucky shore.

■■ The controversy arises by reason of the unusual situation respecting the legal title to the bed of the Ohio River adjacent to the Kentucky shore. It is well established that the Ohio River is within the territorial confines of Kentucky and that the northern boundary of Kentucky is the low-water mark on the north bank of the river. It is also well settled that title to the southern half of the river bed, from the thread of the stream to the Kentucky shore, is in the riparian land owners in Kentucky, and that title to the northern portion of the river bed, from the thread of the stream to the low-water mark on the northern shore is in the Commonwealth of Kentucky. Handly's Lessee v. Anthony, 5 Wheaton 374, 5 L.Ed. 113; Louisville Bridge Co. v. City of Louisville, 81 Ky. 189; State of Indiana v. State of Kentucky, 136 U.S. 479, 10 S.Ct. 1051, 34 L. Ed. 329; Ware v. Hager, 126 Ky. 324, 103 S.W. 283; Willis v. Boyd, 224 Ky. 732, 7 S.W.2d 216; City of Covington v. State Tax Commission, 231 Ky. 606, 21 S.W.2d 1010. The specific controversy is the conflicting claims of the plaintiffs and the defendants to the oil and gas rights in the bed of the Ohio River between the thread of the stream and the low-water mark on the northern shore opposite the Kentucky shore.

The plaintiffs, Henry B. Walker, Jr., Trustee, and others, claim the oil and gas rights by virtue of certain land patents from the Commonwealth of Kentucky in the year 1939 following proceedings in the Henderson County Court of Kentucky for that purpose. The defendants, Henderson County, Kentucky and its lessees, Felmont Oil Corporation and Ben M. Strother, who has assigned his interest in the lease to The Carter Oil Company, claim the oil and gas rights by virtue of leases from Henderson County on October 19, 1953 and December 31, 1953. The defendants, Ohio River Oil Company and its assignee, Olen Sharp, claim the oil and gas rights by virtue of a lease on August 7, 1952, from the State Property and Buildings Commission to the Ohio River Oil Company, which purported to lease such portion of the river bed extending 150 miles in length, opposite the Kentucky shore. Following responsive pleadings, motions to dismiss and a pre-trial conference, a pre-trial order was entered providing that the motions to dismiss, together with documents and affidavits filed in support thereof, be treated as motions for summary judgment, that certain issues be reserved for later trial and judgment, and that the following issues be tried on briefs and oral arguments:

I.

Does the State Property & Buildings Commission of the Commonwealth of Kentucky have authority under KRS 56.450–KRS 58.550 inclusive to grant a valid lease disposing of the oil and gas under that portion of the bed of the Ohio River lying between the thread of the stream and the northern low-water line thereof?

II.

Does Henderson County, Kentucky, a County adjacent to the Ohio River, have authority under KRS 56.190–56.320 to lease the oil and gas lying beneath that part of the bed of the Ohio River which is between the thread of the stream and the northern low-water line thereof?

III.

Is that part of the bed of the Ohio River lying between the thread of

the stream and the northern low-water line capable of appropriation under the patent procedure as outlined in KRS 56.190–56.320?

The District Judge, in a Memorandum Opinion supporting his ruling, held against the plaintiffs, Henry B. Walker, Jr., Trustee, and others claiming patent rights from the Commonwealth, and also against Henderson County, Kentucky and those parties holding leases therefrom, and in favor of the State Property and Buildings Commission and those parties holding leases from it. An order and judgment to that effect was entered, which also provided it should be treated as the entry of a final judgment upon the claims adjudged within the meaning of Rule 54(b) of the Rules of Civil Procedure, 28 U.S.C. Separate appeals were thereafter taken by the plaintiffs, Henry B. Walker, Jr., Trustee, and others, and by the defendants, Felmont Oil Corporation, The Carter Oil Company, and Henderson County. The appeals have been heard together by this court.

The Memorandum of the District Judge, which is reported at Walker v. Felmont Oil Corp., D.C., 136 F.Supp. 584, contains a clear statement and analysis of the conflicting claims, together with the reasoning of the District Judge and citation of the applicable authorities upon which he relied, to which reference is made, making it unnecessary to review it here in detail.

█ Before reaching the merits, the question of jurisdiction over the defendant, the State Property and Buildings Commission, by reason of the 11th Amendment of the U. S. Constitution, is presented. The Amendment provides that the judicial power of the United States shall not be construed to extend to any suit against one of the United States by citizens of another state. Apparently, this question was not urged upon the District Judge by any of the parties and no specific ruling on it was made by him. The question is not referred to in the briefs on this appeal. However, the issue was made by the motions of the Commonwealth of Kentucky and the Commission to dismiss the complaint as amended for failure to state a claim upon which relief could be granted. Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 49, 64 S.Ct. 873, 88 L.Ed. 1121. See also Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338. The present action, although directed against the Commission, actually seeks to take from the Commonwealth of Kentucky certain oil and gas royalties under a contract executed by the Commission, and in substance might properly be considered as one against the Commonwealth. Any judgment in this case will affect the interest and property rights of the Commonwealth, not those of the Commissioners. Kennecott Copper Corp. v. State Tax Commission, 327 U.S. 573, 577, 66 S.Ct. 745, 90 L.Ed. 862; Kentucky State Park Commission v. Wilder, 256 Ky. 313, 315, 76 S.W.2d 4; Lehman v. Williams, 301 Ky. 729, 730, 193 S.W.2d 161; Louisiana Land & Exploration Co. v. State Mineral Board, 5 Cir., 229 F.2d 5, certiorari denied 351 U.S. 965, 76 S.Ct. 1029, 100 L.Ed. 1485. Compare: Kentucky State Park Commission v. Wilder, 260 Ky. 190, 84 S.W.2d 38; Watkins v. Department of Highways, Ky., 290 S.W. 2d 28. The Commonwealth's immunity from suit is not waived by the mere filing of pleadings by the Commission and by its agreeing to a trial on the merits. Sec. 231, Constitution of Kentucky, provides that the General Assembly may, by law, direct in what manner and in what courts suit may be brought against the Commonwealth. Real doubt exists whether the General Assembly of Kentucky has consented to the prosecution of a suit of this nature against it in the Federal Courts. Sections 56.450, 12.010 (2) and (7), 15.020. Great Northern Life Ins. Co. v. Read, supra, 322 U.S. 47, 54, 64 S.Ct. 873; Ford Motor Co. v. Dept. of Treasury of State of Indiana, 323 U.S. 459, 466–469, 65 S.Ct. 347, 89 L.Ed. 389; Kennecott Copper Corp. v. State Tax Commission, supra, 327 U.S. 573, 578–579, 66 S.Ct. 745.

There is in addition the question whether diversity of citizenship exists

in this case between the plaintiffs and the Commission. State Highway Commission of Wyoming v. Utah Construction Co., 278 U.S. 194, 199–200, 49 S.Ct. 104, 73 L.Ed. 262; O'Neill v. Early, 4 Cir., 208 F.2d 286, 289; Lowe v. Manhattan Beach City School District, 9 Cir., 222 F.2d 258, 259.

■ Apparently, the parties to this action were in agreement in having the issues adjudicated by the federal court instead of the state court. But jurisdiction cannot be conferred by agreement of the parties. Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 167, 60 S.Ct. 153, 84 L.Ed. 167. The jurisdictional question must be decided before the case is considered on its merits. In view of the failure of the parties to present their views to the court on this issue and in order to enable them to do so in a matter involving a difficult question under Kentucky law, and to have the benefit of a ruling by the District Judge, this case should be returned to the District Court for that purpose. Edward G. Budd Manufacturing Co. v. N. L. R. B., 332 U.S. 840, 68 S.Ct. 262, 92 L.Ed. 412; Mitchell v. United States, 348 U.S. 905, 75 S.Ct. 311, 99 L.Ed. 710.

There is another question in this case which was not raised by the parties, but which is so closely connected with the question of jurisdiction that it should also be considered by the District Judge.

■ Although jurisdiction may exist, it does not follow that it must be exercised. The Declaratory Judgment Act confers a discretion on the court rather than an absolute right upon the litigant. Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 241, 243, 73 S.Ct. 236, 97 L.Ed. 291; Brillhart v. Excess Insurance Co., 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620; Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407. Federal courts should exercise their discretionary power with the proper regard for the rightful independence of state governments in carrying out

their domestic policy. Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of lower federal courts. Commonwealth of Pennsylvania v. Williams, 294 U.S. 176, 185, 55 S.Ct. 380, 79 L.Ed. 841; Burford v. Sun Oil Co., 319 U.S. 315, 318, 334, 63 S.Ct. 1098, 87 L.Ed. 1424. A federal court in a declaratory judgment suit should give strong consideration to the public interest involved in the avoidance of needless friction with state policies. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971; Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 350, 71 S.Ct. 762, 95 L.Ed. 1002.

This action involves (1) the construction of former Sections 4702, 4703 and 4704, Carroll's Kentucky Statutes,[1] dealing with vacant and unappropriated land in Kentucky, and (2) the construction of Sections 56.440–56.990, Kentucky Revised Statutes, enacted in 1949, creating the State Property and Buildings Commission. They are purely questions of state law, which the federal court must ascertain and apply. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

■ With respect to the claims of the patentees under the statutes in the first group, appellees rely principally upon Ware v. Hager, 126 Ky. 324, 103 S.W. 283 and Willis v. Boyd, supra, 224 Ky. 732, 7 S.W.2d 216. Appellants vigorously attack the correctness of the ruling in Ware v. Hager, contending that it ignored and failed to follow prior rulings of the same court. They contend that the 1926 amendment of the statute was for the purpose of correcting the mistake. This contention has merit. Willis v. Boyd, supra, was decided after the amendment, but did not involve the same issue. However, in disposing of the case the opinion, without considering the effect of the 1926 amendment, apparently expressed the same opinion as the Court had expressed in Ware v. Hager. Appel-

1. Now KRS 56.190–56.230.

lants contend that the ruling relied on is dictum, is clearly erroneous, not binding on the federal court, and should not be followed. There is no other ruling by the Kentucky Court of Appeals, that State's court of last resort, on this particular issue. Kentucky has no intermediate appellate court. Dictum from the state court of last resort is not binding upon the District Court in a diversity of citizenship action. Copper S. S. Co. v. State of Michigan, 6 Cir., 194 F.2d 465, 468. In view of the criticism directed against it, it is questionable what weight it has as "available data" in attempting to determine what the state law is. West v. American Telephone & Telegraph Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139.

A conflict between the state and federal rulings on a purely local matter is probable. It appears that such a conflict may already exist through a ruling of the Henderson Circuit Court, a trial court of general jurisdiction in Henderson County, Kentucky. Although this ruling was not binding upon the federal court, King v. Order of United Commercial Travelers, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608, it indicates the conflict which is in the making between the state and federal courts. This Court has experienced difficulty in a matter of this kind heretofore. Doggrell v. Great Southern Box Co., 6 Cir., 206 F.2d 671, rehearing granted, 6 Cir., 208 F.2d 310. "The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court." Railroad Commission of Texas v. Pullman Co., supra, 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971; Brillhart v. Excess Insurance Co., supra, 316 U.S. 491, 497, 62 S. Ct. 1173, 86 L.Ed. 1620.

With respect to the claims of Henderson County and its lessees, we have the following situation. Kentucky counties, other than Henderson lie on the southern shore of the Ohio River along the 150 miles in length covered by the appellees' lease. The conflicting claims of such counties, the Commonwealth of Ken-

tucky, and possible patentees, in the bed of the Ohio River adjacent to such counties, if litigated in the courts of Kentucky, will not be determined by any ruling in this case. Henderson County and its lessees rely upon Willis v. Boyd, supra, and Board of Councilmen of City of Frankfort v. Pattie, 227 Ky. 343, 12 S.W. 2d 1108, but we think the statements in those opinions are dicta with little or no bearing upon the issue here in question. The particular portion of the statute which is the center of the controversy in this case was not referred to in the Pattie case, and was not discussed in either of the two cases. There is no direct ruling by the Kentucky Court of Appeals on this question. No matter how seasoned the judgment of the District Judge may be, it cannot escape being a forecast rather than a determination. Ralroad Commission of Texas v. Pullman Co., supra, 312 U.S. 496, 499–500, 61 S.Ct. 643. Uniformity throughout the State with respect to this important question of property rights is not promoted by the exercise of federal jurisdiction in this case.

With respect to the statutes creating the State Property and Buildings Commission, its constitutionality was upheld in Preston v. Clements, 313 Ky. 479, 232 S.W.2d 85. There is a sharp difference of view between the parties as to whether it is applicable to the natural resources in land owned by the State. There is no ruling by the Court of Appeals of Kentucky to guide the District Judge in construing this statute. Its construction involves the policy of the Commonwealth in its handling of its natural resources.

Whether the rights of the parties can be adequately protected by proceedings in the state courts, whether there is any need for the intervention of a federal court to protect such rights, and the public interests which are involved in the possible conflict between federal and state court rulings as referred to above, are questions which should have the District Judge's careful consideration in connection with the jurisdictional issue involved on the remand. In addition to

the cases referred to above, see: Williams v. Dalton, 6 Cir., 231 F.2d 646, 648; Spector Motor Service, Inc., v. McLaughlin, 323 U.S. 101, 104–105, 65 S.Ct. 152, 89 L.Ed. 101; Shipman v. Dupree, 339 U.S. 321, 70 S.Ct. 640, 94 L.Ed. 877; A. F. of L. v. Watson, 327 U.S. 582, 591, 598–599, 66 S.Ct. 761, 90 L.Ed. 873; Stefanelli v. Minard, 342 U.S. 117, 72 S. Ct. 118, 96 L.Ed. 138.

The judgment of the District Court is vacated and the case remanded for further proceedings in accordance with the views expressed herein.