379 F.2d 376
 154 U.S.P.Q. 128
 AMERICAN NEEDLE AND NOVELTY CO., a copartnership, composed
of Bruce Kronenberger and Anna Kronenberger,
Plaintiff-Appellant,
v.
SCHUESSLER KNITTING MILLS, INC., a corporation, and
Schuessler Knitting Foundation, Defendant-Appellees.
 No. 15809.
 United States Court of Appeals Seventh Circuit.
 June 6, 1967, Rehearing Denied July 19, 1967.
 
 Maurice S. Cayne, David D. Kaufman, Chicago, Ill., for plaintiff-appellant.
 Jerome F. Fallon, John W. Chestnut, Dawson, Tilton, Fallon, Lungmus & Alexander, Chicago, Ill., for defendants-appellees.
 Before HASTINGS, Chief Judge, DUFFY, Senior Circuit Judge and KILEY, Circuit Judge.
 DUFFY, Senior Circuit Judge.
 
 
 1
 Plaintiff is a co-partnership whose partners are residents of Chicago, Illinois. The defendants are Illinois corporations located in Chicago, Illinois.
 
 
 2
 The second amended complaint herein is in four counts. 1) For a declaratory judgment of non-infringement and invalidity of United States Patent No. 2,998,611, issued to Schuessler Knitting Mills;[1] 2) Damages for unfair competition; 3) False patent marking, and 4) Misuse of the patent.
 
 
 3
 After a short trial consuming parts of two days, the District Court ruled that it had no jurisdiction over Counts 1, 2 and 4. Findings of fact and conclusions of law as prepared by defendants' counsel, were signed by the trial court.
 
 
 4
 Paragraph II of the judgment provided 'Plaintiff's Second Amended Complaint is hereby dismissed with prejudice and all relief sought herein by the Plaintiff is hereby denied.'
 
 
 5
 The subject matter of the Schuessler patent is a knitted cap and face hood, and the method of forming the same. The cap is made from a single tube of knitted material and has a top portion, a cuff-forming portion together with a face mask portion which is adapted to be worn over the wearer's face or telescoped up into the top portion.
 
 
 6
 The cap and the face hood of the Schuessler cap can be worn down singly or together. When the face hood is not in use, it is telescoped within the top portion of the cap. Schuessler started selling these caps in the early 1960's, and claims its sales amounted to almost 1,500,000 caps per year.
 
 
 7
 In August 1963, Bruce Kronenberger, one of the plaintiff's partners, requested Schuessler to sell him knitted inserts (face hoods). The first delivery of these face hoods pursuant to Kronenberger's request was on November 11, 1963. The invoice for this shipment indicated there would be an additional fifty cents per dozen royalty if the inserts were used as inside pullout masks according to the Schuessler patent.
 
 
 8
 A second shipment of inserts was made to plaintiff in December 1963. These inserts were used to make sample caps which plaintiff submitted to Sears, Roebuck & Company in an effort to obtain an order from Sears.
 
 
 9
 In March 1964, plaintiff started selling a face mask cap to Sears but the knitted insert was not supplied by Schuessler. When Walter Schuessler was informed of this, he became upset because plaintiff had not given Schuessler an opportunity to supply these inserts. When Mr. Schuessler made inquiry of Kronenberger as to the caps furnished to Sears, Kronenberger stated 'I am making it a little different,' and also that the plaintiff's cap did not infringe defendant's patent.
 
 
 10
 Schuessler asked Kronenberger over the telephone to send him a simple cap so that he could determine if plaintiff's cap actually did avoid the patent. Schuessler then asked his attorneys to write a letter to Kronenberger confirming his telephone conversation and making a request for a sample cap. Also, he asked his attorneys to request Sears to send a sample cap. Shortly after the date of this letter, Kronenberger voluntarily sent an indemnity agreement to Sears.
 
 
 11
 No answer was received by Schuessler to the telephone request or to the letter to plaintiff written by Schuessler's attorneys. The instant suit was filed ten or eleven days after the telephone conversation.
 
 
 12
 A fundamental infirmity in the judgment entered by the District Court is that although the Court held it had no jurisdiction over Counts 1, 2 and 4 of the complaint, yet, the judgment provided 'Plaintiff's Second Amended Complaint is hereby dismissed with prejudice and all relief sought herein by the Plaintiff is hereby denied.'
 
 
 13
 Thus, plaintiff's prayer for a judgment of invalidity of Patent No. 2,998,611 and non-infringement thereof is denied with prejudice.
 
 
 14
 A dismissal 'with prejudice' is a final judgment on the merits which will bar a second suit between the same parties for the same cause of action. Cleveland v. Higgins, 2 Cir., 148 F.2d 722, 724, cert. den. 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 428.
 
 
 15
 It seems clear that on the basis of the judgment below, the defendant could assert that judgment as res judicata or collateral estoppel on the issues of validity and alleged infringement of Patent No. 2,998,611.
 
 
 16
 The count of unfair competition was also denied by the trial court on the ground that diversity of citizenship did not exist, and the Court did not have jurisdiction of the federal question, i.e., the question of validity and the question of infringement of the patent.
 
 
 17
 It is fundamental that to invoke the Declaratory Judgment Act, there must exist between the parties a justiciable controversy. 28 U.S.C. 2201, 2202. The trial court relied upon Walker Process Equipment, Inc. v. FMC Corporation, 7 Cir., 356 F.2d 449, cert. den. 385 U.S. 824, 87 S.Ct. 56, 17 L.Ed.2d 61. In Walker, we held that the action of the owner of a patent cautioning possible infringers and offering licenses, does not constitute a charge of infringement. If the rule laid down in Walker is applicable here, the trial court correctly dismissed the complaint and suit for a declaratory judgment.
 
 
 18
 However, a difficult question arises because another division of this Court, on October 26, 1966, decided Sticker Industrial Supply Corp. v. Blaw-Knox Co., 7 Cir., 367 F.2d 744. This decision was four and a half months after the decision rendered below in the instant case.
 
 
 19
 A reading of Sticker demonstrates that we painted with a rather broad brush. That case involved a method patent used in the steel industry. The plaintiff and defendant were the only competitors in the particular product. Prior to the issue of the patent, the patent counsel of Blaw-Knox wrote to plaintiff that the Boynton patent, if issued, would cover the installations made by Blaw-Knox The letter also stated that the plaintiff's customers' right to use plaintiff's product 'would remain 'to be settled" after the patent was issued. When the method was held to be patentable, Blaw-Knox wrote to its customers that licenses were available. We said 'In effect, the notices indicated to the customers that they would need a license under the method patent or would be infringing it.' (367 F.2d at 746.)
 
 
 20
 Under these circumstances, this Court held that a sufficient charge of infringement existed for jurisdiction under the Declaratory Judgment Act.
 
 
 21
 We did make the rather broad statement '* * * the 'touchstone' for determining whether there is jurisdiction under the Declaratory Judgment Act is whether the plaintiff has a 'reasonable apprehension' of liability to himself and his customers.' (367 F.2d at 747.)
 
 
 22
 The phrase 'reasonable apprehension of liability to himself and his customers' may well be subject to varying interpretations. The conjunctive 'and' is used. Assuming, but not deciding, that a correct interpretation of Sticker is that a reasonable apprehension of liability by the plaintiff alone is sufficient, we hold that in the instant case such apprehension did not reasonably exist.
 
 
 23
 The letter from defendant's attorney to plaintiff stated that plaintiff's cap insert 'may conflict with Schuessler Patent 2,998,611.' The letter further stated '* * * in a recent conversation you have indicated your cap is of a non-infringing construction and have agreed to supply a sample of the cap so that a determination may be made by Schuessler's attorneys.'
 
 
 24
 In the letter by the defendants' attorneys to Sears, asking for a sample of plaintiff's caps, the attorneys pointed out that Joel Manufacturing Company of Richmond, Virginia, had taken a license under the Schuessler patent, and that they (the attorneys) have been informed that plaintiff's cap was very similar in appearance to the Joel cap.
 
 
 25
 There is no showing in the testimony that Sears had any apprehension of liability. Furthermore, plaintiff had voluntarily handed Sears an indemnity agreement.
 
 
 26
 The owner of a patent should have the privilege of making a fair investigation as to the possible infringement of his patent without calling down on his head the undertaking of a defense of an expensive and burdensome declaratory judgment suit alleging invalidity and non-infringement.
 
 
 27
 Some prospective litigants in patent cases may feel there is some strategic advantage in a rush to the courthouse. We seriously doubt that there is any sound basis for such an attitude.
 
 
 28
 We recognize the rule that a claim of infringement need not be formally asserted, but in the case at bar we hold that a charge of infringement was not made, formally or informally, and that a justiciable issue as to invalidity and infringement did not exist at the time the instant suit was filed.
 
 
 29
 We have in mind that at the trial, defendants did make the claim of infringement. However, the basis of our decision must be the conditions that existed at the time the instant suit was filed.
 
 
 30
 The judgment of the District Court must be reversed and remanded with directions to eliminate the words 'with prejudice' from the judgment, and to eliminate all findings of fact and conclusions of law that pertain to the issues of validity of Patent No. 2,998,611 and the alleged infringement of that patent.
 
 
 31
 We affirm the judgment of the District Court in dismissing the complaint and the suit because of lack of jurisdiction over Claims 1, 2 and 4 of the second amended complaint. We also affirm the judgment of the District Court denying plaintiff relief under Count 3 for false marking.
 
 
 32
 There shall be no recovery of taxable costs between the parties.
 
 
 33
 Affirmed in part, reversed in part.
 
 
 
 [1]
 The defendants are referred to as 'Schuessler.' Walter Schuessler was the inventor. The patent in suit is now owned by Schuessler Knitting Foundation of which Walter Schuessler is an officer